THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLYDE SMITH, Defendant-Appellant.

(No. 11393;

Fourth District—February 17, 1972.

CRAVEN, J., concurring in part and dissenting in part.

John F. McNichols, District Defender, Illinois Defender Project, of Springfield, (J. Daniel Stewart, of counsel,) for appellant.

Paul R. Welch, State's Attorney, of Bloomington, for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant appeals from a conviction for aggravated battery the sentence for which was three to five years. The victim was his wife. This occurred on June 4. The indictment was returned November 7 and on the trial proof was permitted of a scuffle over an ax on November 9 between them. The exact testimony of the wife was that "me and him was scuffling with it [the ax] and finally my son got to him and talked him out of it". It is argued now that the admission of this incident over objection warrants a new trial. In addition, or rather, in the alternative,

defendant requests that we modify the sentence under Supreme Court Rule 615.

■■ Of course, evidence of other crimes committed by a defendant not connected with the offense charged are inadmissible, not so much for the reason that they lack relevancy as such, but rather that they prove a legally non-recognizable materiality—hence a legal immateriality— the propensity or disposition of the defendant to commit crime, which suggests in turn the inference that a defendant therefore committed the crime for which he is on trial, *i.e.*, that he in all likelihood is guilty. Notwithstanding this inference, evidence of other crimes may be admitted to prove such material elements in a given case as knowledge, intent, motive, design, plan, identification, and to negate defenses of mistake or inadvertence, or to show an absence of good faith, and, important here, to evidence a consciousness of guilt or guilty consciousness.

■■■ If for the sake of argument we construe the "scuffling" with the ax at the very least to be an intimidation of the complaining witness and at the very most an attempt to remove her as a witness, such conduct is indeed evidence then of consciousness of guilt from which an inference can be drawn that the defendant is guilty of the offense charged. Consciousness of guilt is very potent evidence of just that, and "nothing but an hallucination or a most extraordinary mistake will otherwise explain its presence". (II Wigmore on Evidence 106, section 273(1).) Of course, if the conduct sought to be admitted bears no relationship to the offense charged, it would be the duty of the court to reject such evidence, but not otherwise. Specifically here, if it can be said, and we think it can, that defendant's conduct was an attempt at the very least to suppress evidence by intimidation, then a very clear inference can be drawn that defendant was conscious that he was guilty of the offense charged. As was stated in *People v. Gambony*, 402 Ill. 74, 80, 83 N.E.2d 321, 325; "In a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence".

In *People v. Bennett*, 3 Ill.2d 357, 121 N.E.2d 595, defendant was told that an acquaintance had given the authorities incriminating information—"had sold him [defendant] the stuff"—and in response defendant had stated that "he would take care of [him] when he got out on bond". Over objection this evidence was admitted and on appeal held properly so:

"The occurrence in question took place the morning after the arrest, when plaintiff in error was confronted for the first time with the fact that Cardosi had implicated him. His reaction to this new information was, we think, admissible. The jury was entitled to believe that his

reply was that he would take care of Cardosi when he got out on bond, and was entitled to consider that reply as indicative of guilt". Nor need the quantum of proof of other offenses be that of beyond a reasonable doubt. (*People v. Clark*, 104 Ill.App.2d 12, 244 N.E.2d 842.) There it was said:

"Countless Illinois decisions establish that evidence of other crimes is properly admissible to prove identity, intent, knowledge, or a common scheme or plan [citing cases] * * *. The same decisions, *People v. Spaulding*, 309 Ill. 292, at 303—304, 141 N.E. 196, in particular, require us to reject the further contention of defendant that in order for evidence of other offenses to be admissible, it must first be proved beyond a reasonable doubt that the accused committed such offenses".

And in *People v. Jackson*, 22 Ill.2d 382, 176 N.E.2d 803:

"While we are familiar with the rule that evidence proving or suggesting the commission of another crime is generally inadmissible if relevant only for the purpose of showing a disposition to commit crime and inviting an inference of guilt for that reason [citing cases], at the same time evidence of other offenses may be admissible to show guilty knowledge * * *. In a criminal case, where evidence is relevant and otherwise admissible it is not to be excluded because it may also have a tendency to prejudice the accused".

In *Spaulding*, cited above in *Clark*, it was further stated: "Modern decisions establish the rule that all efforts by either party to a suit, directly or indirectly, to destroy, fabricate or suppress evidence may be shown as a circumstance indicating that the party's cause is an unrighteous one. Evidence that the accused has attempted to destroy evidence against himself is always admissible for the purpose of showing consciousness of guilt". To the same effect is *People v. Fiorito*, 413 Ill. 123, 108 N.E.2d 455.

Defendant argues that the limited proof made here does not rise to a showing that the defendant was attempting to intimidate the complaining witness—his wife.He acknowledges that direct proof is not necessary, but that here the closeness of dates between November 7—9, as proof of intimidation is at best only a "tenuous conclusion". However, that he certainly knew his wife would be the star witness against him cannot be doubted, and, we think, it can reasonably be said, too, that he must have known that absent her testimony his chances of acquittal would be immeasurably improved. The fact that this incident of November 9 was merely one in a series of quarrels and fights which the defendant and his wife seemed to have been carrying on seriatim since day 1, while an *argument* against intimidation, is only just that—and the

weight the jury may have accorded to this incident because of such seriatim scuffles and fights may have been very scant indeed. Regardless of credibility, there were sufficient facts and inferences as such for the admission of the incident as evidence of an attempt to intimidate the complaining witness. Whether anyone actually believed this to be true, is beside the point—and an argument against its admission being reversible error in all events.

■■ Next it is said that the sentence of three to five years is inappropriate, that is, excessive, considering the circumstances of the offense and defendant's background. His wife, it is argued, came out of the indictment much better than he did—as he received two bullet wounds, was hospitalized and then held in jail. That may be, but is our opinion it is not an argument for reducing the sentence—here relatively modest under the circumstances. We agree that a 1952 sentence of six years in Tennessee for housebreaking, larceny, and receiving stolen property should probably be ignored in fixing sentence—and, of course, maybe it was. This offense has a spread of one to ten years. We think we should give credence to the trial judge's determination in the sentence he imposed—that is, it was not excessive in the context rendered.

Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN concurring in part and dissenting in part:

I agree with my colleagues that this conviction should be affirmed. I do not agree that the sentence is proper nor defensible.

The majority opinion suggests that the trial judge's sentence determination was not excessive in the context rendered. Excessiveness of sentence is not the sole issue here.

The sentence as imposed offends against the principle of indeterminacy. It divests the parole board of portions of its discretionary authority and by approving a sentence with the minimum and the maximums so closely related, this court abdicates its responsibility of appellate review of sentence. This court has approved and the other districts of the appellate court have approved specifically or as a general principle the standards promulgated by the American Bar Association with reference to sentencing which suggests that the minimum sentence should be no more than one-third of the maximum. (See *People v. Scott,* 117 Ill.App. 2d 344, 253 N.E.2d 553 (and cases there cited).) No reason is suggested by this record why substantial compliance with such standards should not be required in this case.