THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SHERRY LYNNE MITCHELL, Defendant-Appellant.

Fifth District No. 82—79

Opinion filed July 5, 1983.—Rehearing denied August 3, 1983.

Dennis J. Hogan, of Murphysboro, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

The defendant, Sherry Lynne Mitchell, was convicted by a jury in the circuit court of Jackson County of two counts of attempt (murder) and two counts of aggravated battery of a child. She was sentenced to concurrent terms of 14 years on each count.

At trial, Carol Schumaker, a registered nurse at St. Joseph's Memorial Hospital, testified that at approximately 9 a.m. on August 23, 1981, defendant came to the hospital with a baby girl. Defendant stated that she had to find the mother of the baby and left the hospital. According to Ms. Schumaker, the child was in critical condition due to respiratory distress; the child had bruises on her face, head, torso, arms, hands, legs, and feet; and the bruises were received on different occasions. Ms. Schumaker called Dr. Donald Porter who gave the child medical attention. At 11 a.m. the child was transferred to Cardinal-Glennon Hospital.

Dr. Porter testified that the child's heart rate was 60, which indicated that the child was in distress. The child was dehydrated and

comatose. Dr. Porter observed multiple areas of contusions on the child's head, arms, legs, and abdomen as well as a human bite mark on the abdomen. Dr. Porter further observed the child's eyes and found her pupils to be unequal and slow to react, which is indicative of intracranial type injury or brain damage.

Jerry Goforth, a Murphysboro police officer, testified that he stopped the truck which was believed to have been used to take the child to the hospital. A man was in the vehicle. Officer Goforth then went to defendant's trailer where defendant stated that she was not Sherry Lynne Mitchell but was the babysitter. Officer Goforth radioed for a description of Ms. Mitchell; and when he confronted defendant with it, she then admitted she was Ms. Mitchell. Defendant willingly went to the police station. At the police station, the other children who were with defendant when Officer Goforth arrived were picked up by their mother.

Curt Graff, Murphysboro police officer, testified that Holbert Carrel was in the motor vehicle which was stopped by Officer Goforth. At approximately 2:30 p.m. on August 23, 1981, Officer Graff advised defendant of her *Miranda* rights, and she waived them. Defendant stated that she had taken her 17-month-old daughter, Shannon, to the hospital. The child was conscious and had bruises on her body. In addition to defendant and her daughter, Holbert Carrel, his ex-wife, and his two children also lived in the trailer. Defendant stated that at approximately 3 p.m. on Saturday, August 22, she hit her child with her hand, fist, and belt in order to take out her frustration after she had an argument with Mr. Carrel. The child played that afternoon. When the child went to bed at 11 p.m., defendant saw the bruises. Defendant related that on August 23, she hit the child several times with her hand and then placed the child in a high chair where the child had a seizure and passed out. Defendant placed a cool rag on the child's head and 20 minutes later took her to the hospital. Defendant stated that she wanted to give up the child because she hated the child's father.

Michael Dennis testified that on June 23, 1981, he sold defendant a $10,000 life insurance policy on the life of Shannon in which defendant was designated as beneficiary. Mr. Dennis was unsure whether the policy had lapsed due to a failure to pay the premiums.

Korman Smith, a supervisor for the Illinois Department of Children and Family Services, testified that Shannon remained in Cardinal-Glennon Hospital until October 7, 1981, when she was transferred to Rinkin-Jordon nursing home in Clayton, Missouri. On December 10, 1981, Mr. Smith visited Shannon and observed that she could not

raise her head, feet, or legs and could not roll over. She could sit only with the aid of an orthopedically designed chair.

On appeal, defendant initially contends that she was denied her statutory right to a speedy trial. (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a).) The record, however, establishes that defendant was brought to trial within 120 days of her incarceration; therefore, no violation of the statute occurred.

■ Defendant next contends that an arrest warrant was never issued for her arrest as provided by section 111—2(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 111—2(d)). The record discloses that defendant was in custody continuously after August 23, 1981, due to her inability to post bond. On August 24, 1981, an information was filed, and defendant made her first appearance in court. We have examined the record on appeal and find no arrest warrant, the only reference to an arrest warrant being a notation on the back of the indictment which was returned on November 16, 1981. That notation stated: "Bail set at $100,000 (Mitchell). Capias or Warrant of Arrest ordered to issue." However, the docket sheet does not indicate that an arrest warrant was issued.

The issuance of an arrest warrant does not, of itself, formally charge a defendant with a crime. (*People v. Dockery* (1966), 72 Ill. App. 2d 345, 355, 219 N.E.2d 687, 692.) In the case at bar, defendant was informed of the crime with which she was charged on the next day following her statement which focused the investigation upon her. She was informed in court of the amount of bail set for the offense.

■ Jurisdiction of the circuit court is not conferred by the filing of an information or the return of an indictment; jurisdiction is conferred by the provisions of section 9 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, sec. 9), which provides that the circuit courts have "original jurisdiction of all justiciable matters." The circuit courts have jurisdiction in all cases involving offenses which fall within the ambit of section 1—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 1—5). (*People v. Gilmore* (1976), 63 Ill. 2d 23, 26, 344 N.E.2d 456, 458.) Since the filing of an information or the return of an indictment does not confer jurisdiction on the circuit court, it cannot be said that the absence of an arrest warrant deprives a circuit court of jurisdiction. Moreover, defendant's contention in this regard overlooks the fact that peace officers are expressly authorized by statute to make an arrest without a warrant. Section 107—2(1)(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 107—2(1)(c)) provides that a peace officer may arrest a person without a warrant when he has reasonable grounds to believe that the

person is committing or has committed an offense. It is evident in the instant case that the officers had reasonable grounds to believe that defendant had committed an offense. Since jurisdiction over criminal matters are conferred by the provisions of the Illinois Constitution and since the officers were specifically authorized to make an arrest without a warrant in the case at bar, the issuance of an arrest warrant was not necessary to confer jurisdiction upon the trial court.

■■ Defendant's third contention of error was that she was not proved guilty beyond a reasonable doubt. A conviction for attempted murder requires proof of a specific intent to kill or to take human life. (*People v. Roberts* (1979), 75 Ill. 2d 1, 8, 387 N.E.2d 331, 334; *People v. Morgan* (1978), 62 Ill. App. 3d 279, 283, 378 N.E.2d 1298, 1302; *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 1030, 379 N.E.2d 641, 643.) A conviction for aggravated battery of a child, on the other hand, requires proof that the accused was a person of the age of 18 years and upwards who intentionally or knowingly, without legal justification and by any means, caused great bodily harm or permanent disability or disfigurement to a child under the age of 13 years. In a prosecution·for attempt (murder), the intent to kill must be proved beyond a reasonable doubt (*People v. Thorns*); however, proof of a defendant's intent to kill another can rarely be based on direct evidence. (*People v. Jones* (1977), 55 Ill. App. 3d 446, 451, 370 N.E.2d 1142, 1147.) The requirement of proof beyond a reasonable doubt does not preclude a conviction based solely on circumstantial evidence, and evidence of the overall circumstances surrounding the act in question will support a conviction if it gives rise to an inference of intent to kill. (*People v. Thorns.*) It is the function of the jury to determine the existence of the requisite intent, and that determination will not be disturbed or reversed unless it clearly appears that there exists a reasonable doubt as to defendant's guilt. *People v. Thorns; People v. Jones.*

■ Based on the evidence adduced at trial, we conclude that defendant was not proved guilty of attempt (murder) beyond a reasonable doubt. The only evidence concerning the infliction of Shannon's injuries was defendant's statement that she struck the child with her hand, fist, and belt on two separate dates and the testimony of Ms. Schumaker that the bruises were not of the same age. No other evidence was presented on the extent of the bruises or the force by which they were inflicted. See *People v. Morgan.*

■ Nevertheless, we find that the evidence was sufficient to sustain the convictions for aggravated battery of a child. There is no question that the defendant inflicted severe injuries on Shannon as

charged. The sole issue is the defendant's intent at the time she inflicted those injuries. An accused's voluntary departure from the scene of an alleged murder attempt without inflicting as much harm on the victim as he had an opportunity to do has operated as an influential factor in some courts' decisions that death was not intended; however, it has been said in an attempt murder case that if a man resolves on a criminal enterprise and proceeds so far in it that his act amounts to an indictable attempt, it does not cease to be such even though he voluntarily abandons the evil purpose. Annot., 54 A.L.R.3d 612, 618 (1974).

*People v. Thomas* (1970), 127 Ill. App. 2d 444, 262 N.E.2d 495, is factually similar to the case at bar. In *Thomas*, defendant was charged with attempt murder, aggravated battery, and rape. The evidence indicated that Thomas forced his way into the victim's apartment while holding a knife, told her to shut up or be killed, banged the victim's head against a chest of drawers, and commenced hitting the victim in the head while poking at her face with the knife. Thomas then raped the victim, robbed her and fled. The *Thomas* court reversed the attempt murder conviction on the basis that the opportunity to commit any intended murder was so great that there was insufficient proof that Thomas intended or attempted to commit murder. Similarly, in the case at bar, defendant was at home with the defenseless child and had the perfect opportunity to rid herself of the child by killing her if that was in fact what she intended. Therefore, we conclude that the element of intent necessary to sustain a conviction for attempt murder was not proved beyond a reasonable doubt. We note that the jury may have been prejudiced by the introduction of the evidence that at one time the defendant was the beneficiary in a policy of insurance on the life of Shannon; however, no evidence was presented that that policy was in effect on the dates of the beating nor that defendant ever hinted that she would kill or injure Shannon in order to get these proceeds.

Defendant's fourth contention of error is that the court erred in failing to instruct the jury on the offense of battery. The court denied the instruction after the State argued that the evidence showed that defendant was guilty of aggravated battery. When an offense charged in the indictment includes within it another offense of a lower degree, and the evidence is contradictory in regard to the degree of the offense actually committed, the defendant may be convicted of a lesser offense. (*People v. Ardelean* (1938), 368 Ill. 274, 280, 13 N.E.2d 976, 980.) However, when there is no evidence offered to justify a verdict of a lesser included offense, the trial court properly

may refuse to instruct the jury on that offense. (*People v. Ardelean; People v. Handley* (1972), 51 Ill. 2d 229, 235, 282 N.E.2d 131, 136, *cert. denied* (1972), 409 U.S. 914, 34 L. Ed. 2d 175, 93 S. Ct. 247; *People v. Virgil* (1974), 19 Ill. App. 3d 744, 748, 312 N.E.2d 816, 819.) In the case at bar, the testimony established that great bodily harm was done to Shannon; therefore, there was no evidence to support the offense of simple battery.

Defendant further contends that certain other proposed jury instructions were improperly refused; however, these were non-IPI instructions and the law of the case was properly covered by the instructions which were given.

 Defendant also contends that she was denied her right to a prompt preliminary hearing. Defendant was incarcerated on August 23, 1981, and a preliminary hearing was held on September 23, 1981, at which the court found that no probable cause was shown to hold defendant on the attempted murder charge. Probable cause was found on the aggravated battery charges. On October 14, 1981, an amended information was filed which charged one count of attempted murder and two counts of aggravated battery of a child. On November 16, 1981, the grand jury returned an indictment charging defendant with two counts of attempt (murder) and two counts of aggravated battery of a child.

An order releasing the accused from want or probable cause after a preliminary hearing does not preclude subsequent indictment or trial upon subsequent grand jury indictment. (*People v. Kent* (1972), 54 Ill. 2d 161, 163-64, 295 N.E.2d 710, 712.) Moreover, the return of an indictment before a preliminary hearing could be conducted did not establish a violation of defendant's right to a prompt preliminary hearing. (*People v. Hendrix* (1973), 54 Ill. 2d 165, 169, 295 N.E.2d 724, 726.) We believe that the preliminary hearing afforded defendant 30 days after she was incarcerated on the first information satisfies the constitutional mandate for a prompt preliminary hearing. See *People v. Latimore* (1975), 33 Ill. App. 3d 812, 815, 342 N.E.2d 209, 212.

The defendant lastly contends "the court abused its discretion and erred in acquiescing in executive branch conduct determining policy totally denying the accused defendant a prompt fair counseled jury trial" and "[t]his Court, sitting not as only another Illinois venue, has a right and duty to remedy by means of forfeited bonds or securities a total denial of a constitutional right." We have examined the entire record and find that the issues specifically made or inferred are without merit.

For the foregoing reasons, defendant's convictions and sentences

for attempt (murder) are reversed, and her convictions and sentences for aggravated battery of a child are affirmed.

Affirmed in part; reversed in part.

JONES and KARNS, JJ., concur.