THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES WOODS, Defendant-Appellant.

First District (2nd Division)   No. 86—3056

Opinion filed July 19, 1988.—Rehearing denied August 30, 1988.

Paul P. Biebel, Public Defender, of Chicago (Janet R. Stewart, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, James E. Fitzgerald, and Judy L. Groeneveld, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Charles Woods, was found guilty of two counts of armed violence, not guilty of attempted murder, and not guilty of three counts of aggravated battery. The court merged one armed violence into the other and sentenced defendant to six years in the Illinois Department of Corrections. Defendant appeals the verdicts contending that finding him guilty of armed violence but not guilty of the underlying felony of aggravated battery is legally inconsistent.

The State's evidence revealed that the victim, Marguerite Henry, had met defendant while both were working at a radio station. They dated a few times between 1978 and 1985. On February 15, 1985, at about 8 p.m., Henry and her son stopped by the radio station to see the defendant. The three left the station, stopped at a pizza place, and then went to defendant's home. Henry testified that she told defend-

ant she wanted him to take her home at about 9:30 p.m. Woods stated that he would take them home in the morning and that she and her son should spend the night.

Henry then testified that the next morning she asked to be taken to the hospital because she needed medication. Defendant refused and left the apartment. When he returned, he sat down in a chair, reached under the end table and retrieved a gun. As he sat in the chair, he shifted the gun from one hand to the other. Henry told him to put the gun away as it might go off. She heard a click, and as she turned around, the gun went off. The bullet hit her above the right eye.

Henry testified that she fell to the floor and screamed for defendant to call the police. Defendant replied that he would not call the police unless she would say that she shot herself. Defendant then called the police.

An ambulance arrived and took Henry to the hospital where she remained for two weeks. Her right eye was removed during surgery. She now wears a prosthesis where her right eye had been.

Officer Douglas Longfellow of the Chicago Heights police department also testified. He was the officer who responded to the shooting. Defendant told him that Henry had shot herself. Longfellow observed a .38 caliber revolver on the couch, opened it, and found one shell under the hammer. The revolver was capable of holding five bullets.

At the police station, Longfellow searched defendant and found four live .38 caliber rounds in his pocket. At this point, defendant told Longfellow that he was holding the gun when Henry grabbed his right hand and the gun went off.

Later that afternoon, in the presence of Longfellow and an assistant State's Attorney, defendant stated that Henry never grabbed his hand, but that he pointed the gun at her and pulled the trigger. According to Longfellow, he stated that he just wanted to scare her and thought the gun was empty.

Defendant testified in his own behalf. He stated that in addition to the radio station, he was employed by the East Chicago Heights police department. His duties included transporting prisoners to and from court. He would be armed with the gun used in the shooting when transporting prisoners.

Defendant testified that on the day of the shooting, he worked at the radio station until midnight. At that time, he, Henry and Henry's son went to a pizza place, then to his home, where Henry and her son spent the night.

At 7:15 the next morning, Henry awoke defendant and asked to be taken to the hospital. Defendant told Henry he would do so after

he slept one more hour. At some time after 8 a.m., Henry again asked that defendant take her to the hospital. Defendant refused and went downstairs. When defendant returned, Henry again requested to be taken home. Defendant testified that he was sleepy, tired and upset. He picked up the gun and started playing with it. He testified that as he went to open it, it discharged. He stated that as soon as the gun discharged, he dropped it to the floor and ran to a pay phone to call the police. He stated that when the police arrived, he was so scared that he told them Henry had shot herself.

A jury found defendant guilty of armed violence based on aggravated battery causing great bodily harm and armed violence based on aggravated battery causing permanent disability. The jury, however, found him not guilty of the aggravated battery counts. The court stated that for the purpose of sentencing, the armed violence counts merged. Defendant was sentenced to the minimum of six years in the Illinois Department of Corrections.

■ As a preliminary matter, defendant contends that his conviction for armed violence based on aggravated battery causing great bodily harm should be reversed because the jury found defendant not guilty of the predicate offense of aggravated battery causing great bodily harm. The State agrees that defendant's conviction for armed violence based on aggravated battery causing bodily harm should properly be vacated as the Illinois Supreme Court has held that where a defendant is found guilty of armed violence but not guilty of the predicate offense, the verdicts are legally inconsistent and the armed violence conviction must be reversed. (*People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233.) Therefore, defendant's conviction for armed violence based on aggravated battery causing great bodily harm is vacated.

Defendant also contends that his conviction for armed violence based on aggravated battery causing permanent disability must be reversed as he was found not guilty of aggravated battery causing permanent disfigurement. The State, however, maintains that the verdicts are not inconsistent and that the armed violence conviction predicated on aggravated battery causing permanent disability must stand.

■ As previously stated, where a defendant is found guilty of armed violence but not guilty of the predicate offense, the verdicts are legally inconsistent and the armed violence conviction must be reversed. (*People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233.) However, it is not necessary that the defendant be charged with the predicate offense. In *People v. Myers* (1981), 85 Ill. 2d 281, 426

N.E.2d 535, the Illinois Supreme Court affirmed a conviction of armed violence based on a felony that was not charged; aggravated battery. In *People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233, the court noted that a defendant need not be convicted of the predicate felony, but that before he may be convicted of armed violence based upon the predicate felony, the elements of that felony must be established and it must be proved that the felony was committed while armed.

In the instant case, defendant was found not guilty of aggravated battery causing permanent *disfigurement*. He was not charged with armed violence predicated on aggravated battery causing permanent disfigurement. Further, although he was found guilty of armed violence predicated on aggravated battery causing permanent *disability*, he was not charged with aggravated battery causing permanent disability.

██ █ In construing a statute, language used should be given its plain and ordinary meaning. (*People v. Scribner* (1982), 108 Ill. App. 3d 1138, 1143, 440 N.E.2d 160.) In the instant case, the language at issue is "disfigurement" and "disability." According to Black's Law Dictionary, disfigurement is that which "impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." (Black's Law Dictionary 420 (5th ed. 1979).) Disability is defined as "[a]bsence of competent physical *** powers; *** loss of physical function that reduces efficiency." Black's Law Dictionary 415 (5th ed. 1979).

██ The record indicates that Henry's eye was removed and she was fitted with a glass eye. Obviously, Henry lost physical function in that eye. Although the record does indicate a scar above her right eye, it is silent as to the nature or extent. Therefore, based on this record, it is not unreasonable for the jury to determine that Henry was disabled, but not disfigured. The jury's verdict reflects the distinction between disability and disfigurement and it will not be disturbed.

██ Defendant also contends that the armed violence instructions tended to confuse the jury and therefore the convictions cannot stand. However, the law is clear that in order to allege error for failure to offer an instruction, the party must have submitted such instruction and requested that it be tendered to the jury. (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487.) In the instant case, defendant neither tendered an alternative armed violence instruction nor did he object to those given. Therefore, this issue is waived.

■ Defendant contends that the prosecutor's comments on the burden of proof during rebuttal closing argument diminished the importance of the reasonable doubt standard. The prosecutor argued to the jury that the burden of proof was not insurmountable and prevailed in criminal trials "every day, all year, all the time." However, the Illinois Supreme Court has held that a prosecutor's comment that the burden was "not unreasonable" and "met each and every day in courts" does not reduce the State's burden or shift the burden to defendant. (*People v. Bryant* (1983), 94 Ill. 2d 514, 523-24, 447 N.E.2d 301.) Therefore, we find the similar remarks in the instant case to be within legitimate bounds of argument.

Lastly, defendant contends that he was not proven guilty beyond a reasonable doubt of armed violence based on aggravated battery because defendant did not possess the necessary intent.

■ It is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) Where the evidence is merely conflicting, the jury's finding of guilty will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (63 Ill. 2d at 299; *People v. Morehead* (1970), 45 Ill. 2d 326, 329, 259 N.E.2d 8.) The testimony of a single witness, if it is positive and the witness is credible, is sufficient to convict even though it is contradicted by the defendant. *Morehead*, 45 Ill. 2d at 329-30.

■ The jury heard testimony that the shooting occurred after the victim had repeatedly asked defendant to take her home despite his refusals to do so. The victim also testified that prior to the shooting, she had told him to put the gun away because she was afraid it might go off. She testified that when he did not do so, she knew that he "wasn't playing." The jury also heard that defendant refused to call the police until Henry promised to say that she shot herself.

The jury heard from Officer Longfellow that defendant gave three conflicting stories on the day of the shooting. One such version was that defendant pointed the gun at Henry and pulled the trigger.

Based on the evidence presented, the jury was entitled to believe the victim's testimony and find defendant guilty beyond a reasonable doubt.

In accordance with the foregoing, we vacate the conviction for armed violence based on aggravated battery causing great bodily harm and affirm the conviction for armed violence based on aggravated battery causing permanent disability. As the trial court merged

the two armed violence convictions and sentenced defendant to the minimum sentence authorized, our decision has no effect on defendant's sentence and, therefore, it will not be disturbed.

Affirmed in part; vacated in part.

HARTMAN, P.J., and SCARIANO, J., concur.